**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JASMINE NORVILLE, on behalf of herself and all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>TD BANK, N.A.,<br><br>        Defendant. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT**<br>**DEMAND FOR JURY TRIAL** |

Plaintiff Jasmine Norville, ("Plaintiff") individually and on behalf of all others similarly situated, brings this Class Action Complaint against TD Bank, N.A. ("TD" or "Defendant"), based upon personal knowledge with respect to herself, and on information and belief and the investigation of counsel as to all other matters, in support thereof alleges as follows:

## INTRODUCTION

1.      This is a civil action seeking monetary damages, restitution, and declaratory relief from Defendant TD Bank arising from the unfair and improper assessment and collection of overdraft fees on transactions that should not have been assessed a fee.[1]

2.      This practice breaches contractual promises made in TD's contracts.

3.      The language in TD's checking account contract documents ("Account Documents") which address overdraft fees ("OD Fees") promise that TD will reduce balances to reflect debit card transactions immediately, thus precluding such approved debit card transactions from being assessed an OD Fee. TD nevertheless charges OD Fees on these

---

[1] According to TD's Personal Fee Schedule (**Exhibit A** hereto), a $35 overdraft is charged regardless of whether the item is returned for insufficient funds or paid into overdraft, subject to a limit of five (5) such fees per day, per account.

transactions.

4.    TD also breaches its duty of good faith and fair dealing when it charges OD Fees even when customers did not actually have insufficient funds because the funds were taken from the available balance and held at the time of approval.

5.    TD's customers have been injured by TD's improper practices to the tune of millions of dollars taken from their accounts in violation of their agreements with TD.

6.    On behalf of herself and the Class, Plaintiff seeks damages, restitution, and injunctive relief for Defendant's violations as set forth more fully below.

## PARTIES

7.    Plaintiff Jasmine Norville ("Plaintiff") is a citizen and resident of Bronx, New York.

8.    Defendant TD Bank is an American national bank and subsidiary of the Canadian multinational Toronto-Dominion Bank. TD is headquartered in Cherry Hill, New Jersey. TD has approximately 1,300 branches and 1,900 ATM machines in the United States. By assets, TD is ranked in the top 10 among U.S. banks and provides banking services to 6,500,000 east coast customers from Maine to Florida.

9.    TD Bank has 372 branches in New York and provides banking services throughout the state.

## JURISDICTION AND VENUE

10.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2), because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which at least one member of each of the Classes is a citizen of a State different from the Defendant.  The number of members of the proposed Class and

Subclass in aggregate exceeds 100 accountholders. 28 U.S.C. § 1332(d)(5)(B).

11.     This Court has personal jurisdiction over the Defendant because Defendant's actions and omissions committed in or aimed at this District gave rise to the claims alleged in this Complaint.

12.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### I.    TD CHARGES OD FEES ON TRANSACTIONS THAT DO NOT ACTUALLY OVERDRAW THE ACCOUNT

#### A.    Overview of Claim

13.     TD issues debit cards to its checking account customers, including Plaintiff, which allow its customers to have electronic access to their checking accounts for purchases, payments, withdrawals, and other electronic debit transactions.

14.     Pursuant to its Account Documents, TD charges fees for debit card transactions that purportedly result in an overdraft.

15.     Plaintiff brings this cause of action challenging TD's practice of charging OD Fees on what are referred to in this complaint as "Authorize Positive, Purportedly Settle Negative Transactions" ("APPSN Transactions").

16.     Here's how it works. At the moment debit card transactions are authorized on an account with positive funds to cover the transaction, TD immediately reduces accountholders checking accounts for the amount of the purchase, purports to set aside funds to cover that transaction, and as a result, the accountholder's displayed "available balance" reflects that subtracted amount. As a result, customers' accounts will always have sufficient available funds to cover these transactions because TD has already sequestered these funds for payment.

17.     However, TD still assesses crippling OD Fees on many of these transactions and mispresents its practices in its Account Documents.

18.     Despite putting aside sufficient available funds for debit card transactions at the time those transactions are authorized, TD later assesses OD Fees on those same transactions when they purportedly settle days later into a negative balance. These types of transactions are APPSN Transactions.

19.     TD maintains a running account balance in real time, tracking funds accountholders have for immediate use. This running account balance is adjusted, in real-time, to account for debit card transactions at the precise instance they are made. When a customer makes a purchase with a debit card, TD sequesters the funds needed to pay the transaction, subtracting the dollar amount of the transaction from the customer's available balance. Such funds are not available for any other use by the accountholder, and such funds are specifically associated with a given debit card transaction.

20.     That means when any subsequent, intervening transactions are initiated on a checking account, they are compared against an account balance that has already been reduced to account for any earlier debit card transactions. Thus, many subsequent transactions incur OD Fees due to the unavailability of the funds sequestered for those debit card transactions.

21.     Still, despite keeping those held funds off-limits for other transactions, TD improperly charges OD Fees on the APPSN Transactions, although the APPSN Transactions always have sufficient available funds to be covered.

22.     The Consumer Financial Protection Bureau ("CFPB") has expressed concern with this very issue, flatly calling the practice "unfair" and/or "deceptive" when:

> A financial institution authorized an electronic transaction, which
> reduced a customer's available balance but did not result in an

overdraft at the time of authorization; settlement of a subsequent unrelated transaction that further lowered the customer's available balance and pushed the account into overdraft status; and when the original electronic transaction was later presented for settlement, because of the intervening transaction and overdraft fee, the electronic transaction also posted as an overdraft and an additional overdraft fee was charged. Because such fees caused harm to consumers, one or more supervised entities were found to have acted unfairly when they charged fees in the manner described above. Consumers likely had no reason to anticipate this practice, which was not appropriately disclosed. They therefore could not reasonably avoid incurring the overdraft fees charged. Consistent with the deception findings summarized above, examiners found that the failure to properly disclose the practice of charging overdraft fees in these circumstances was deceptive. At one or more institutions, examiners found deceptive practices relating to the disclosure of overdraft processing logic for electronic transactions. Examiners noted that these disclosures created a misimpression that the institutions would not charge an overdraft fee with respect to an electronic transaction if the authorization of the transaction did not push the customer's available balance into overdraft status. But the institutions assessed overdraft fees for electronic transactions in a manner inconsistent with the overall net impression created by the disclosures. Examiners therefore concluded that the disclosures were misleading or likely to mislead, and because such misimpressions could be material to a reasonable consumer's decision-making and actions, examiners found the practice to be deceptive. Furthermore, because consumers were substantially injured or likely to be so injured by overdraft fees assessed contrary to the overall net impression created by the disclosures (in a manner not outweighed by countervailing benefits to consumers or competition), and because consumers could not reasonably avoid the fees (given the misimpressions created by the disclosures), the practice of assessing fees under these circumstances was found to be unfair.

Consumer Financial Protection Bureau, Winter 2015 "Supervisory Highlights." Thus, for at least several years, TD has been aware that the practice challenge in this case was deemed unfair by United States banking regulators. Notably, TD Bank does not use this practice in Canada where it also has massive banking operations.

23.    There is no justification for this improper practice, other than to maximize TD's OD Fee revenue. APPSN Transactions only exist because intervening checking account

transactions supposedly reduce an account balance. But TD is free to protect its interests and either reject those intervening transactions or charge OD Fees on those intervening transactions—and it does the latter to the tune of millions of dollars each year. But TD is not content with these millions in OD Fees. Instead, it seeks to seize millions more in OD Fees by also assessing fees on APPSN Transactions.

24.     Besides being unfair and unjust, these practices breach contractual promises made in TD's adhesion contracts—contracts which fail to inform accountholders about, and in fact misrepresent, the true nature of TD's processes and practices. These practices also exploit contractual discretion to gouge accountholders.

25.     In plain, clear, and simple language, the checking account contract documents covering OD Fees promise that TD will only charge OD Fees on transactions that have insufficient funds to "cover" that debit card transaction.

26.     In short, TD is not authorized by contract to charge OD Fees on transactions that have not overdrawn an account, but it has done so and continues to do so.

**B.**     **Mechanics of a Debit Card Transaction**

27.     A debit card transaction occurs in two parts. First, authorization for the purchase amount is instantaneously obtained by the merchant from TD. When a merchant physically or virtually "swipes" a customer's debit card, the credit card terminal connects, via an intermediary, to TD, which verifies that the customer's account is valid and that sufficient available funds exist to "cover" the transaction amount.

28.     At this step, if the transaction is approved, TD immediately reduces the balance of funds in the customer's account by the amount of the transaction and sequesters funds in the amount of the transaction but does not yet transfer the funds to the merchant.

29.     Indeed, the entire purpose of the immediate debit and hold of positive funds is to ensure that there are enough funds in the account to pay the transaction when it settles, as discussed in the Federal Register notice announcing revisions to certain provisions of the Truth in Lending Act regulations:

> When a consumer uses a debit card to make a purchase, a hold may be placed on funds in the consumer's account to ensure that the consumer has sufficient funds in the account when the transaction is presented for settlement. This is commonly referred to as a "debit hold." During the time the debit hold remains in place, which may be up to three days after authorization, those funds may be unavailable for the consumer's use for other transactions.

Federal Reserve Board, Office of Thrift Supervision, and National Credit Union Administration, Unfair or Deceptive Acts or Practices, 74 FR 5498-01 (Jan. 22, 2009). TD Bank does not adhere to this understanding of debit holds, but rather fails to sequester the held funds and thus allows the approved debit card transaction to be assessed an OD Fee.

30.     Usually, one to three business days after the hold has been instituted, funds in the amount of the approved transaction are actually transferred from the customer's account to the merchant's account.

31.     TD (like all credit unions and banks) decides whether to "pay" debit card transactions at authorization. After that, TD is obligated to pay the transaction no matter what. For debit card transactions, that moment of decision can only occur at the point of sale, at the instant the transaction is authorized or declined. It is at that point—and only that point—when TD may choose to either pay the transaction or decline it. When the time comes to actually settle the transaction, it is too late—the financial institution has no discretion and must pay the charge. This "must pay" rule applies industry wide and requires that, once a financial institution authorizes a debit card transaction, it "must pay" it when the merchant later makes a demand, regardless of other account activity. See Electronic Fund Transfers, 74 Fed. Reg. 59033-01,

59046 (Nov. 17, 2009).

32.    There is no change—no impact whatsoever—to the available funds in an account when this step occurs.

**C.    TD's Account Documents**

33.    Plaintiff has a TD checking account, which is governed by TD's Account Documents.

34.    Among the Account Documents which govern Plaintiff's relationship with TD is a document entitled, Personal Deposit Account Agreement ("Account Agreement"), attached hereto as **Exhibit B**.

35.    The Account Agreement states in pertinent part that TD uses the available balance to determine when overdrafts occur, and when an accountholder uses a debit card funds are deducted to cover those purchases:

**For (i) Checking Accounts and (ii) Money Market Accounts with check access, items are processed as follows:**

> First, items, including both deposits and withdrawals, are added to and deducted from your available Account balance in chronological date and time order based on the information that we receive for each item. The following transaction fees also will be deducted in date and time order based on when they are assessed: wire transfer fees, deposit return fees, returned item fees, and overdraft fees. For some items, we do not receive date and time information. We assign these items a date and time, which may vary from when the transactions were conducted. All checks drawn upon your account that are not cashed at a TD Bank Store are assigned a time of 11pm on the date we receive them. If multiple items have the same date and time information, they will be processed in the following order: (i) deposits first; (ii) checks drawn upon your account next, from lowest to highest check number, and then (iii) other withdrawals, from lowest to highest dollar amount. For purposes of this section (a), withdrawals include transactions that have been presented for payment as well as pending debit card, ATM or electronic transactions that have been authorized but not yet presented to us for payment. Please see the additional details below for more information regarding pending transactions.

**Exhibit B at 7-8.**

**Additional details regarding pending transactions for all Accounts:**

>When you use a debit card, ATM card, or other electronic means to make withdrawals, we may receive notice of the transaction before it is actually presented to us for payment. That notice may be in the form of a merchant authorization request or other electronic inquiry. Upon receipt of such notice, we treat the transaction as "pending" at the time we receive notice, and subject to certain exceptions, we deduct the amount of the pending transactions from your available Account balance to determine the amount available to pay other items presented against your Account. The amount of a pending transaction may not be equal to the amount of the actual transaction that is subsequently presented for payment and posted to your Account. If a pending transaction is not presented for payment within three (3) Business Days after we receive notice of the transaction, we will release the amount of the pending transaction. We do not deduct the amount of pending debit card transactions from your available Account balance for certain categories of merchants that frequently request authorization for amounts in excess of the likely transaction amount, including hotels and resorts, airlines and cruise lines, car rental companies, and automated gas pumps (pay at the pump).

*Id*. at 8-9.

36.     For APPSN Transactions, which are immediately deducted from a positive account balance and held aside for payment of that same transaction, there are always funds to cover those transactions—yet TD assesses OD Fees on them anyway

37.     The above promise means that transactions are only overdraft transactions when they are authorized into a negative account balance. Of course, that is never true for APPSN Transactions.

38.     APPSN Transactions are always initiated at a time when there are sufficient available funds in the account.

39.     In fact, TD actually authorizes transactions on positive funds, sets those funds aside on hold, then fails to use those same funds to settle those same transactions. Instead, it uses

a posting process described below.

40.    All the above representations and contractual promises are untrue. In fact, TD charges OD Fees even when sufficient funds exist to cover transactions that are authorized into a positive balance. No express language in any document states that TD may impose OD Fees on any APPSN Transactions.

41.    The Account Documents misconstrue TD's true debit card processing and overdraft practices.

42.    First, and most fundamentally, TD charges OD Fees on debit card transactions for which there are sufficient funds available to cover the transactions. That is despite contractual representations that TD will only charge OD Fees on transactions with insufficient available funds to cover a given transaction.

43.    TD assesses OD Fees on APPSN Transactions that do have sufficient funds available to cover them throughout their lifecycle.

44.    TD's practice of charging OD Fees even when sufficient available funds exist to cover a transaction violates a contractual promise not to do so. This discrepancy between TD's actual practice and the contract causes accountholders like Plaintiff to incur more OD Fees than they should.

45.    When a debit card transaction is authorized for APPSN Transactions, sufficient funds are sequestered from the account immediately, consistent with standard industry practice.

46.    Because these withdrawals take place upon initiation, these sequestered funds should not be used later to pay other transactions or fees assessed by the Bank. But that is what TD does when it utilizes sequestered funds during its batching posting process.

47.    In reality, TD's actual practice is to essentially run the same debit card transaction

twice to determine if the transaction overdraws an account – both at the time a transaction is authorized and later at the time of settlement.

48.     At the time of settlement, however, an available balance does not change at all for these transactions previously authorized into good funds. As such, TD cannot then charge an OD Fee on such transaction because the available balance has not been rendered insufficient due to the pseudo-event of settlement.

49.     Upon information and belief, during its nightly batch posting process, TD releases the sequestered funds held for an APPSN Transaction and allows these funds to be used for other transactions, despite the fact that its Account Documents do not properly disclose this process.

50.     This undisclosed step allows TD to charge OD Fees on transactions that never should have caused an overdraft – transactions that were authorized into sufficient funds, and for which TD specifically set aside money to pay them.

51.     This discrepancy between TD's actual practices and the contract causes accountholders to incur more OD Fees than they should.

52.     In sum, there is a huge gap between TD's practices as described in the Account Documents and TD's practices in reality.

**D.  TD Abuses Contractual Discretion**

53.     TD's treatment of debit card transactions to charge OD Fees is more than a breach of the express terms of the Account Documents. In addition, TD exploits contractual discretion to the detriment of accountholders when it uses these policies.

54.     Moreover, TD uses its contractual discretion to cause APPSN Transactions to incur OD Fees by knowingly authorizing later transactions that it allows to consume available funds previously sequestered for APPSN Transactions.

55.     TD uses these contractual discretion points unfairly to extract OD Fees on transactions that no reasonable accountholder would believe could result in OD Fees.

**E.  Reasonable Accountholders Understand Debit Card/POS Transactions Are Debited Immediately**

56.     The assessment of OD Fees on APPSN Transactions is fundamentally inconsistent with immediate deduction and holding of funds for debit card/POS transactions. That is because, if funds are immediately debited from the balance and held, they cannot be depleted by intervening transactions (and it is that subsequent depletion that is the necessary condition of APPSN Transactions). If funds are immediately debited from the available balance, then they are necessarily available to be applied to the debit card transactions for which they are debited.

57.     TD is aware that this is precisely how accountholders reasonably understand such transactions to work.

58.     TD knows that many accountholders prefer debit cards for this very reason. Research indicates that accountholders prefer debit cards as a budgeting device because they do not allow debt like credit cards do, and because the money comes directly out of a checking account.

59.     Consumer Action, a national nonprofit consumer education and advocacy organization, advises consumers determining whether they should use a debit card that "[t]here is no grace period on debit card purchases the way there is on credit card purchases; the money is immediately deducted from your checking account. Also, when you use a debit card you lose the one or two days of 'float' time that a check usually takes to clear." *What Do I Need to Know About Using a Debit Card?*, Consumer Action (Jan. 14, 2019), https://www.consumeraction.

org/helpdesk/articles/what_do_i_need_to_know_about_using_a_debit_card (last visited July 7, 2021).

60.    Thus TD's accountholders, including Plaintiff, believe that a debit card purchase is the fundamental equivalent of a cash purchase, with the swipe of a card equating to handing over cash, permanently and irreversibly.

**F.    Plaintiff's Debit Card Transactions**

61.    On August 27, 2020, Plaintiff Norville was assessed an OD Fee for a debit card transaction that settled on that day, despite the fact that positive funds were deducted from her available balance immediately when the transactions were approved prior to the OD charge.

62.    On August 28, 2020, Plaintiff Norville was assessed two OD Feed for debit card transactions that settled on that day, despite the fact that positive funds were deducted from her available balance immediately when the transactions were approved prior to that day.

63.    On September 1, 2020, Plaintiff Norville was assessed three OD Fees for debit card transactions that settled on that day, despite the fact that positive funds were deducted from her available balance immediately when the transactions were approved prior to that day.

64.    On September 2, 2020, Plaintiff Norville was assessed an OD Fee for a debit card transaction that settled on that day, despite the fact that positive funds were deducted from her available balance immediately when the transactions were approved prior to that day.

**CLASS ACTION ALLEGATIONS**

65.    Plaintiff brings this action on behalf of herself and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.  This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

66.    The proposed Class is defined as:

**Class 1: The Nationwide "APPSN Class"**

All accountholders who, within the applicable statute of limitations, were charged OD

Fees on APPSN Transactions in a TD checking account.

**Subclass 1: The New York "Sufficient Funds Subclass"**

All New York accountholders who, within the applicable statute of limitations, were

charged OD Fees on APPSN Transactions in a TD checking account. There are numerous

questions of law and fact common to the Classes and those common questions

predominate over any questions affecting only individual members of the Classes.

The class and subclass are collectively referred to as the "Classes."

67.     Plaintiff reserves the right to modify or amend the definition of the proposed

Classes before the Court determines whether certification is appropriate.

68.     Specifically excluded from the Classes are TD Bank, its parents, subsidiaries,

affiliates, officers and directors, any entity in which TD Bank has a controlling interest, all

customers who make a timely election to be excluded, governmental entities, and all judges

assigned to hear any aspect of this litigation, as well as their immediate family members.

69.     The members of the Classes are so numerous that joinder is impractical.  The

Classes consist of thousands of members, the identity of whom is within the knowledge of and

can be ascertained only by resort to TD Bank's records.

70.     The claims of the representative plaintiff are typical of the claims of the Classes in

that the representative plaintiff, like all members of the Classes, was charged overdraft fees on

transactions that were authorized into a positive available balance.  The representative plaintiff,

like all members of the Classes, has been damaged by TD Bank's misconduct in that she has paid

assessed unfair and unconscionable overdraft fees.  Furthermore, the factual basis of TD Bank's

misconduct is common to all members of the Classes, and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Classes. Plaintiff has suffered the harm alleged and has no interests antagonistic to the interests of any other members of the Classes.

71.     There are numerous questions of law and fact common to the Classes and those common questions predominate over any questions affecting only individual members of the Classes:

(a) Whether TD improperly charged OD Fees on APPSN Transactions;

(b) Whether the conduct enumerated above violates the contract;

(c) Whether the conduct enumerated above violates the covenant of good faith and fair dealing;

(d) Whether the conduct enumerated above is a deceptive act or practice in violation of New York law;

(e) The appropriate measure of damages.

72.     Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions and in particular, class actions on behalf of consumers and against financial institutions. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Classes.

73.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each individual class member's claim is small relative to the complexity of the litigation, and due to the financial resources of TD, no class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Classes will continue to suffer losses and TD's misconduct

will proceed without remedy.

74.     Even if Class members themselves could afford such individual litigation, the court system could not.  Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

75.     Plaintiff suffers a substantial risk of repeated injury in the future.  Plaintiff, like all members of the Classes, is at risk of additional overdraft fees on transactions that do not overdraw her account.  Plaintiff and the members of the Classes are entitled to injunctive and declaratory relief as a result of the conduct complained of herein.  Money damages alone could not afford adequate and complete relief, and injunctive relief is necessary to restrain TD from continuing to commit its unfair and illegal actions.

76.     TD has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole.

<u>**CAUSES OF ACTION**</u>

<u>**COUNT I**</u>
**Breach Of Contract Including The Covenant Of Good Faith And Fair Dealing**
**(On Behalf Of The Classes)**

77.     Plaintiff repeats and incorporates all of the preceding allegations as if fully set forth herein.

78.     Plaintiff and all members of the proposed Class contracted with TD for checking account services, including debit card services.

79.     TD breached promises made to Plaintiff and all members of the proposed Class when, as described herein, TD charged OD Fees as a result of transactions that did not overdraw a checking account, on APPSN Transactions.

80.     In addition, there exists an implied covenant of good faith and fair dealing in all contracts that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

81.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

82.     The implied covenant of good faith and fair dealing applies to the performance and enforcement of contracts, limits the parties' conduct when their contract defers a decision on a particular term, omits terms, or provides ambiguous terms.

83.     TD has breached the covenant of good faith and fair dealing and abused its discretion in its contract as described herein. Specifically, TD should not have used its discretion

to charge OD Fees on APPSN Transactions. The Account Documents do not provide any basis for TD to charge OD Fees on APPSN Transactions.

84.     Plaintiff and all members of the proposed Class have performed all, or substantially all, of the obligations imposed on them under the contract.

85.     Plaintiff and all members of the proposed Class have sustained damages as a result of TD's breaches of the contract.

**COUNT TWO**
**Violation Of N.Y. Gen. Bus. Law § 349**
**(On Behalf of the New York Subclass)**

86.     Plaintiff repeats and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

87.     TD's practice of charging fees on APPSN transactions violates New York General Business Law § 349 ("NYGBL § 349").

88.     NYGBL § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in the state of New York.

89.     As a bank with multiple branch locations in New York, TD conducted business, trade, or commerce in New York State.

90.     In the conduct of its business, trade, and commerce, and in furnishing services in New York, TD's actions were directed at consumers.

91.     In the conduct of its business, trade, and commerce, and in furnishing services in New York, TD engaged in deceptive, unfair, and unlawful acts or practices, in violation of NYGBL § 349, including but not limited to the following:

(a) TD misrepresented material facts, pertaining to the sale and/or furnishing of

banking services to the New York Subclass by representing and advertising that it

would only charge overdraft fees when an overdraft actually occurred; and

    (b) TD omitted, suppressed, and concealed the material fact that it would charge fees on APPSN transactions.

92.    TD systematically engaged in these deceptive, misleading, and unlawful acts and practices, to the detriment of Plaintiff and members of the New York Subclass.

93.    TD willfully engaged in such acts and practices, and knew that it violated NYGBL § 349 or showed reckless disregard for whether it violated NYGBL § 349.

94.    As a direct and proximate result of TD's deceptive trade practices, members of the New York Subclass suffered injury and/or damages, including assessment of OD Fees on APPSN transactions.

95.    Had Plaintiff known she could be charged OD Fees on APPSN transactions, she would have made different payment decisions so as to avoid incurring such fees or opted out of OD protection.

96.    As a result of TD's violations of NY GBL § 349, Plaintiff and members of the putative Subclass have paid and will continue to pay excessive fees to TD. Accordingly, they have suffered and will continue to suffer actual damages.

97.    Accordingly, Plaintiff and the New York Subclass members are entitled to relief under N.Y. Gen. Bus. Law § 349(h), including, but not limited to, actual damages, treble damages, statutory damages, injunctive relief, and/or attorney's fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a)    For an order certifying this action as a class action, appointing Plaintiff as Class Representative, and appointing Plaintiff's counsel as Class Counsel;

(b)    For compensatory and statutory damages on all applicable claims and in an amount to be proven at trial;

(c)    For restitution on all applicable claims and in an amount to be proven at trial;

(d)    For an order requiring Defendant to disgorge, restore, and return all monies wrongfully obtained together with interest calculated at the maximum legal rate;

(e)    For an order enjoining the wrongful conduct alleged herein;

(f)    For other appropriate injunctive and other equitable relief;

(g)    For costs;

(h)    For pre-judgment and post-judgment interest as provided by law;

(i)    For attorneys' fees under the account contracts, the common fund doctrine, and all other applicable rules and law; and

(j)    For such other relief as the court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated:  November 5, 2021                    Respectfully submitted,

                                        **BURSOR & FISHER, P.A.**

                                        By:    _/s/ Joseph I. Marchese_
                                                  Joseph I. Marchese

                                        Joseph I. Marchese
                                        Julian C. Diamond
                                        Matthew A. Girardi
                                        888 Seventh Ave, Third Floor

New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: jmarchese@bursor.com
           jdiamond@bursor.com
           mgirardi@bursor.com

*Attorneys for Plaintiff*